## WOODCOCK *versus* CAMPBELL.

In order to charge the assignor of a bond, (on a contract of indorsement made prior to the passage of the act of 1832, subjecting bonds, payable in Bank, to the Law Merchant,) held, not necessary that demand should have been made at the Bank where the instrument was made payable.

The acts of 1828 '29, requiring the indorsee of a paper to sue the maker thereof to the first Court after due, &c. do not embrace a case, where the maker removes beyond the jurisdiction of the Courts of this State, and so remains during the period when he might be legally sued.

In such case, it is not necessary to charge the indorser, that the party should go beyond the State to find the maker.

Assumpsit by Campbell, in the Circuit Court of Lauderdale, on an instrument in writing, payable at the United States Branch Bank at Nashville, on the twenty third of April, 1832. The case came up on exceptions to the charge of the Court below.

The defendant was first indorser of the paper sued on, which was drawn in his favor by one Boggs. It was attempted to be defended on the ground, that no demand had been made at the Bank, nor had suit been brought against Boggs, as required in the case of indorsers; for it was insisted, that this case came within the statutes of 1828—'9 : but the Court held, and so charged the jury, that if Boggs, the maker, had removed out of the State, before the bond became due, and had so continued; the plaintiff was entitled to judgment, even though no demand had been made at the Bank for payment. And on this decision judgment went for the plaintiff, and the case was brought here for revision.

ANDERSON, for Plaintiff in error, cited 11 *Wheat.* 175 ; 1 *Stewart,* 245 ; *Aik. Dig.* 330 ; 2 *Mason's* R. 151, 167 ; 7 *Bac. Ab.* 189 ; 5 *Fonb.* 669.

HOPKINS, *contra.*—5 *East*, 129 *;* 6 *Cranch*, 221 *;* 11 *Johns.* 142 *;* 3 *Mass.* R. 79 *;* 3 *ibidem*, 81 *;* *Aik. Dig.* 821.

By Mr. Justice THORNTON:

This was an action of assumpsit, brought by Campbell, the defendant in error, against Woodcock, as endorser of a writing obligatory, executed on the 23d of April, 1831, by one George Boggs, jr, whereby he promised to pay the amount therein named, to the said Woodcock, twelve months after date, at the Office of Discount and Deposit of the Bank United States at Nashville; who indorsed the same to one Donahoo, who endorsed to the plaintiff below. The bill of exceptions gives all the testimony, and shews that there was none of any law of Tennessee. The only questions raised by the assignment of errors then, in this Court, which we deem it necessary to consider, arise out of the charge which was given to the jury by the Court trying the case. That charge was, " that if they believed, that Boggs had removed out of the State, before the bond became due, and continued out of the State up to the present time, (*July Term*, 1833,) the jury might find for the plaintiff without proof that a demand of payment had been made at the Bank in Nashville at any time." Before I proceed to consider the propriety of this charge, I will make some preliminary observations on the endorsement, the bond, and the acts of our Legislature touching the same, which will render more intelligible the views advanced on the main points. Every endorsement is a substantive contract; and every act of legislation, affecting the extent of the liability of assigners or endorsers, affects the very rights of parties, and is of the essence of such contract, bearing

no resemblance to such acts of the Legislature, as only purpose to regulate the remedy, or mode of enforcing that liability. The laws then, in force in the country, where the endorsement is made, ascertain the liability of an endorser. That liability, differs with us according to the instrument, which is endorsed or assigned. If it be a bill of exchange, the law merchant governs, if not, but a bond for example, then that liability is such as the statute law in force at the time of the endorsement, imposes. It is important then, to ascertain in every case, the true nature of the instrument endorsed, as the liability varies, with that character. As to the nature of the instrument endorsed in this case, we are constrained to consider it as a bond, whose endorsement imposed no other obligation, than is pointed out in the acts of 1828 and 1829. The act of 1832, passed in December of that year, which makes bonds payable in Bank, subject to the law merchant, can only affect contracts entered into after its passage. Hence I conclude, that this bond is not subject to the law merchant, and of course that the contract of endorsement made in this State, is such as it is constituted, by the acts of 1828 and 1829. In the light of this view of the contract declared on, I will proceed to consider the charge given by the Court as above set forth, which as I apprehend it, contains two legal propositions. 1st. That no demand was necessary to be made at Nashville of payment, by the plaintiff below, before he could assert the liability of the assignor to him. And 2nd, That the removal of the maker or obligor, Boggs, before the bond became due, and his continued absence out of the jurisdiction of the Courts of the State, dispensed with the necessity of suit at the first Court, and a return of

*nulla bona* to a *fi fa* upon a judgment againt him in the county of his residence, as required by the above mentioned acts of our Legislature.

In considering the first proposition above stated, care must be taken not to confound two things which it is the object of these acts of the Legislature to separate and distinguish; that is, the liability of the assignor of a bond, and the liability of the endorser of paper, subjected to the dominion of the *lex mercatoria*. It may be true, that, if this instrument were considered as subject to the law merchant, the liability of the endorser could only be fixed, by proof of demand made at the Bank in Nashville; and yet it would by no means follow that such demand would be necessary to charge the present defendant, who is not the endorser of a mercantile paper. However it might be if this paper were mercantile, I feel confident that no demand was necessary in this case to charge the defendant below. The assignor was bound to do no more than the terms of the instrument assigned, required him to do, in order to make the obligor liable to him, in an action, which the statutes required to be brought, before the liability of the defendant below, as assignor, would attach. If the terms of this bond, according to law, required a demand at the place specified, before any suit could be brought against Boggs, the obligor, then, I would hold, that such demand should have been made; for the acts of 1828—'9, requiring suit to be brought, first against the obligor, imply of course, that whatever is necessary to give such an action against him, should be done. If a demand were necessary to fix him, it would be obligatory upon the assignee to make it. But the necessity of making demand at a particular place, and giving notice to the endorser of a mercan-

tile paper payable at such particular place, proceeds on a ground peculiarly applicable to that class of securities. A demand must be made, not with the sole purpose of making the acceptor, or maker of a note, or bond, liable, where these latter instruments are made mercantile, for it is equally requisite, where he would be liable without it; but it must be done in order to make the endorser liable. Now the policy of the acts of 1828—9, was to relieve the assignees of bonds, and other instruments, not mercantile, from this diligence, as a means of fixing the liability of assignors; and place that liability upon the grounds of suit brought, &c., as therein prescribed. Still however, if such suit could only be brought against the maker, according to the terms of the assigned instrument, after a demand made, such demand it seems to me, would be requisite. The inquiry then arises, was such demand necessary in this case to fix the liability of the obligor. We hold the doctrine that it is not necessary, upon the authority of 11 *Wheat.* 175—17 *John.* 248 ; and of this Court, in the case of *Irvine, admr.* vs. *Withers*—1 *Stew.* 234.

As to the 2d proposition above stated, as contained in the charge excepted to, it is one which has never been submitted, heretofore, to this Court. The correctness of the charge of the Court which affirmed this proposition, depends on the proper construction of the acts of 1828—9, which we have already declared to regulate the contract of assignment now before us. These acts declare substantially, that if the assignee fail to sue the maker or obligor to the first Court of the County, where he resides, the assignor shall be discharged from liability, unless suit be delayed by his consent &c. That when judgment shall be recovered against the maker or obligor,

and a writ of *fi. fa.* shall be returned no property found, the assignee may commence his action against the assignor, or endorser, on the assignment or indorsement, and the said return shall be sufficient evidence of the insolvency of the maker or obligor to authorise a recovery against him on his assignment, or endorsement. The whole course of our legislation on this subject, shews conclusively, that the liability of an assignor or indorser on his engagement as such, has ever been considered as founded on such considerations of legal and moral right, and so sanctioned by Common Law principles, as to be worthy of being put beyond the controversy, which has assailed it in other States of the Union. The first statute which authorised the assignment of bonds, and other instruments not assignable at Common Law, at the same time that it did so, attached to such endorsement, all the liability of the *lex mercatoria.* This continued to be the measure of responsibility, down to the year 1828, when, by an act, whose preamble is in the following words: " Whereas much injury has been done to the citizens of this state, by means of the uncertainty of the decisions of the Courts of this state, in relation to the proper time at which endorsers of bills, notes, bonds, &c., made negotiable by endorsement, by law, shall make demand of payment of the payers of such instruments, for remedy whereof"—this matter was regulated, according to the terms which I have already mentioned ; the act of the following year being explanatory only. The effect of those acts was, it must be apparent, a very material change in the liability of endorsers and assignors of the instruments embraced in their provisions. But it cannot be admitted, that the intention of the legislature was to do more, than to provide against that mischief

which it asserted to exist, under the former law, and to remedy which, is declared to be the purpose of its new provisions. In lieu of demand and notice, which was the supposed source of that mischief of uncertainty, was substituted suit to the first Court against the maker or obligor, and the return of *nulla bona,* as evidence of his insolvency. But it would not be a fair construction to say, that the intention was, by this substitution, to require the new mode of fixing the liability, to be pursued in every case where the demand and notice, for which it was substituted, must before have been observed. The sensible effect of this latter legislation is, that instead of the demand and notice as heretofore, to charge an endorser, insolvency of the maker shall be established, by return of *nulla bona,* in a suit instituted to the first Court of the County where the maker resides. The very language of the enactment would imply, that this requirement of suit has reference to our own internal, judicial and geographical economy, and did not contemplate the intervention of foreign tribunals, where the maker has removed beyond our jurisdiction, before any suit could be brought, and continues abroad beyond the time, within which he is required to be sued. To put any other construction on the law, would be to infer, that the Legislature intended that a ground of claim, which is recognised as one of high moral, and legal obligation, should without any fault attributable to the owner of it, be jeopardised, or lost; for if suit be strictly required, removal even to unknown regions, would no more furnish an excuse, than into another State of the Union. By analogy to the decisions of those States, where suit is necessary to charge an indorser of this class of instruments, by *rule of decision,* as it is here, by express enactment,

I would conclude, that the case of removal, so as to render insolvency impracticable to be established by suit, in the State, as forming an exception. So I would consider, that the *ex parte*, and extraordinary process of attachment, would not be necessary in such case. The act, interpreted as above, with reference to our own jurisdiction only, is in its terms exclusive of this process, for it requires a suit in the county where the obligor resides, which of course is impossible, in case of removal from the State.

The views above taken, embrace every point in the assignment of errors.

Let the judgment be affirmed.