IVEY *vs.* SANDERSON.

1. The statute of eighteen hundred and twenty-eight, defining the liability of endorsers, &c. repeals, by implication, so much of the act of eighteen hundred and twelve, as prescribed the steps necessary to be taken by the holder of endorsed paper, in order to charge the indorser. It requires that a recovery shall be sought against the maker, by suit prosecuted as soon as may be, after the maturity of the endorsed paper, except in cases of bills of exchange, and notes payable in bank—and if such suit prove unproductive, then the indorser may be proceeded against. The contract of the indorser is therefore conditional, and is an undertaking to pay to the endorsee upon the performance of the conditions imposed by the statute.

2. It is competent for the assignee of a bond to sue his assignor, if he has used due diligence to obtain payment from his obligor and has failed,—but if there be no effort to coerce payment from the obligor, or some satisfactory reason furnished for the neglect to make it, the assignor cannot be charged.—And where one took an assignment on a bond, with a knowledge that the obligor resided beyond the limits of the State, and made no effort to collect the amount called for by the bond of the obligor, and assigned no reason for his neglect so to do,—it was held, that he was not entitled in an action against the assignor to recover.

Error to the Circuit court of Lowndes county Assumpsit on the endorsement of a bond.

Plaintiff declared against defendant, at the Spring term of the court aforesaid, eighteen hundred and thirty-six, of a plea of trespass on the case, &c. for that whereas theretofore, to wit, on the —— day of December, eighteen hundred and thirty-four, in the county aforesaid, John Banks, William F. Banks,

Thaddeus Freshwater and Thaddeus F. Banks, made their certain instrument in writing, under their hands and seals, bearing the date, last above mentioned, and thereby then and there promised to pay to Edmund and Almond Sanderson, or order, on or before the first day of January, eighteen hundred and thirty-six, the sum of twelve hundred and fifty dollars, with interest, &c. for value received, and then and there delivered the said instrument in writing to the said Edmund and Almond, the last of whom, to wit, Almond Sanderson, is the defendant, and the said defendant afterwards, to wit, on a certain day, mentioned in the writing, duly endorsed over and assigned said instrument to the plaintiff, by which said endorsement he ordered and appointed payment of the said sum of twelve hundred and fifty dollars, specified in said written and sealed instrument, to be made to the plaintiff, according to the tenor and effect of the said instrument. And the said plaintiff averred that afterwards, to wit, on a certain day in January, eighteen hundred and thirty-six, when the said instrument became due and payable according to the tenor and effect thereof, diligent search and enquiry was made for the residence of the makers aforesaid of said instrument, in the county, and in divers other places, in order that suit might be commenced against them on said instrument, but that on the search and inquiry aforesaid, the residence of the said makers of the said instrument, nor the makers could be found to be sued on, or to make payment of the said instrument, and he averred that the residence of the said makers was unknown, and that they the said makers, had not at any time made payment of the said sum of money in the said instrument specified, or caused the same to be done, or any part thereof, but so to do had hitherto wholly neglected, of which said premises, defendant afterwards had notice. By means whereof and by force of the statute in such case made and provided, the said defen-

dant then and there became liable to pay the said sum of money in the said instrument specified, to the said plaintiff, according to the tenor and effect thereof, and being so liable, he the said defendant, in consideration thereof, afterwards undertook, and then and there faithfully promised plaintiff to pay him said sum of money in said instrument specified, according to the tenor and effect thereof,—all of which he had neglected and refused to do, &c.

Defendant pleaded, 1st. The general issue. 2d. *Actio non,*—because the makers of the note, which was the foundation of the suit, were at the time of its execution and endorsement, and ever since living in the State of North Carolina, which plaintiff well knew at the time of endorsement, yet the plaintiff did not and would not demand payment, nor use any other means to collect the money from the makers of said note, at the time it fell due,. or at any time before the commencement of the suit. And for a further plea in that behalf, defendant said, that at the time of the endorsement of the said note, plaintiff specially promised to collect said note from the makers in North Carolina, where he knew the makers resided, and not to compel the defendant to pay the same. And for a further plea in that behalf, defendant plead fraud, and that he was defrauded in this,—that the contract between him and plaintiff was, that plaintiff should take the note without any recourse upon defendant for payment thereof: that at the time of the endorsement of said note, defendant refused to endorse the same, and said plaintiff falsely and fraudulently represented to defendant, that he did not hold him responsible, and desired defendant's endorsement alone, to assure the makers of the note of his plaintiff's authority to demand the same, which said representations were made by plaintiff, to deceive and defraud the defendant, wherefore he prayed judgment,. &c. Issues were taken on all these pleas.

And at the Spring term, eighteen hundred and thirty-seven, came the parties and a jury, who being elected, tried and sworn, well and truly to try the issues joined between the parties, upon their oaths said, they found for the defendant: It was therefore considered by the court, that the defendant should go thence without day, and recover of the plaintiff his costs in that behalf expended.

The bill of exceptions stated, that on the trial, the plaintiff offered in evidence, a note in the words and figures following, to wit:

"On or before the first day of January, 1836, with interest from the first day of January, 1835, we, or either of us, promise to pay Edmund and Almond Sanderson, or order, twelve hundred and fifty dollars, for value received.   Witness our hands and seals, December, 1834.

"John Banks, [seal.]

"William F. Banks, [seal.]

"Thaddeus Freshwater, [seal.]

"Thaddeus F. Banks, [seal.]

"Test, Cane C. Blount."

The endorsement was as follows:

"I assign over the within to Samuel Ivey, for value received of him.

"August the 10th, 1835.

"A. Sanderson.

"Test, William H. Talley."

The plaintiff then introduced a witness, who proved that the makers of the note lived in Pasquotank county, in the State of North Carolina, at the time of the endorsement of the note to plaintiff, and that he did not think they had ever been in the State of Alabama. Witness further proved, that the makers were men of wealth, and punctual, &c.

The defendant's counsel introduced a witness, who proved that the plaintiff knew at the time the note was endorsed to him, that the makers were not inhab-

itants of this State, and was distinctly informed of their residence as before stated. This was substantially the testimony.

The court charged the jury, that before the plaintiff could recover of the endorser, it was necessary to prove that he had either pursued the maker to insolvency, or that a demand and notice was necessary, and neither appearing in proof, they must find for the defendant. To the charge, the plaintiff excepted, &c.

And the plaintiff now assigned for error, the charge of the court as stated in the bill of exceptions, and that the court erred in rendering judgment for defendant.

*E. S. Dargan*, for plaintiff in error.
*J. B. Clarke*, contra.

COLLIER, C. J.—The plaintiff in error, brought assumpsit in the Circuit court of Lowndes, against the defendant, as the indorser of a bond. In the declaration, it was admitted, that no action had been prosecuted against the obligors, and by way of excuse, alleged that though diligent inquiry and search was made for them, they could not be found, and their residence was unknown. The defendant pleaded *non assumpsit*, and three special pleas, on all of which the plaintiff took issue, but which need not be particularly noticed, as they present no question of law for our decision. On the trial, a bill of exceptions was sealed, from which it appears, that the obligors were men of wealth and punctuality,—that they resided in Pasquotank county, North Carolina, of which plaintiff was advised at the time he became the indorsee. And further, that they had never been in this State since that time. Upon these facts, the court charged the jury "that before the plaintiff could recover of the indorser, it was necessary to prove, that he had either pursued the makers to insolvency, or that a demand and notice was necessary, and neither ap-

pearing in proof, they must find for the defendant."
The jury having returned a verdict for the defendant,
and judgment being thereon rendered, the plaintiff has
brought his case to this court for revision.

It seems to have escaped the notice of the parties,
that the excuse alleged in the declaration for neglecting
to collect the bond of the obligors, was not made out
by proof, but was most clearly disproved on the trial,
but as it was not noticed at the argument, the view we
shall take of the case, relieves us from considering it
here.

The only question we propose to examine, is the cor-
rectness of the instructions given by the judge of the
Circuit court to the jury.   In order to its determination,
it is proper to examine the statutes in regard to the as-
signability of contracts, such as that brought to our
view in the present case.  . By the act of eighteen hun-
dred and twelve, "concerning the assignment of bonds,
notes, &c. and for other purposes," it is enacted, that all
bonds, obligations, bills single, promissory notes, and all
other writings for the payment of money or any other
thing, may be assigned by indorsement, &c.   The as-
signee is authorised to maintain any action thereon,
which the assignor might have maintained previous to
assignment, and the obligor or maker is allowed all
payments, sets off, or discounts made, had, or possessed
against his bond, &c. previous to notice of assignment,
in the same manner as if the obligee or payee had pros-
ecuted an action instead of the assignee.   And the same
remedy is given to an indorsee against the indorser or
indorsers of such paper as is allowed by law, in cases
of inland bills of exchange.

The act of eighteen hundred and twenty-eight, "de-
fining the liability of indorsers, and for other purposes,"
after reciting that much injury has been done to the cit-
izens of this State, by means of the uncertainty of the
decisions of the courts in relation to the proper time at
which indorsees of bills, notes, bonds, &c. shall make
demand of the makers or obligors of such paper, pro-

6P.                    49

ceeds to enact—That thereafter the remedy on bills of exchange, foreign and inland, and on promissory notes, payable in bank, shall be governed by the rules of the law merchant, as to days of grace, protest and notice. All other contracts in writing, for the payment of money or property, or performance of any duty of whatever nature, are declared to be assignable as heretofore, and the same remedy is given to the assignee as the obligee or payee was entitled to. *Provided*, that suit be brought to the first court of the county having jurisdiction of the case, to which process can be made returnable against the maker or obligor; and should the assignee fail to bring suit within that time (without the consent of the assignor, to the delay) against the obligor or maker, the assignor shall be discharged from all liability upon his indorsement. And it is further enacted, that notice of non-payment shall only be required on bills of exchange and notes payable in bank.

Though the statute of eighteen hundred and twenty-eight does not expressly repeal all or any of the pre-existing enactments upon the same subject, yet it operates as a repeal, by implication of so much of the act of eighteen hundred and twelve, as prescribes the steps necessary to be taken by the holder of indorsed paper, in order to charge its indorsers. Instead of making a demand of the maker or obligor, and giving notice of non-payment, "as in cases of inland bills of exchange," it requires that a recovery shall be sought of them by suit, prosecuted as soon as may be after the maturity of the indorsed paper. If such suit shall prove unproductive, then the assignor may be proceeded against. The contract of the indorser is conditional, and is an undertaking to pay to the indorsee, upon the performance of the conditions imposed by the statute.

The court alluded to, by the act, in which the suit is to be brought, is understood to be some court of competent authority, exercising jurisdiction within the State. Such was the decision of this court in *Woodcock vs.*

*Campbell.*[*] In that case, the action was brought on a bond payable "at the United States Branch Bank at Nashville." The plaintiff in error, (who was defendant below) was both the obligee and first indorser: the defence set up 'was, that no demand of payment had been made at the *bank*, nor suit brought against the maker, as required before an indorser could be charged. But this defence was successfully countervailed in the Circuit court, by proving, that the maker had removed without the State, before the bond became due, and so continued up to the time of the trial. In 'this court, two points were made,—*first*, that to fix the liability of the indorser, a demand at the bank was necessary—*second*, that the removal and continuance of the obligor without the State, dispensed with a performance of the condition required by the. act of 'eighteen hundred and twenty-eight. The court say, it may be conceded, that if the instrument sued on, was subject to be controlled by the rules of the *law merchant*, that a demand at the place appointed for its payment, would have been essential to charge the plaintiff in error, but the usages of that branch of the law were excluded in such a case, by the statute of eighteen hundred and twenty-eight, and the explanatory enactment of eighteen hundred and twenty-nine: And the act of eighteen hundred and thirty-two, which modified the law in that respect, being posterior to the date of the bond, could not exert an influence upon the rights of the parties.

In regard to the second question, the court considered, that had the obligor remained within the State, it would have been necessary to sue him before proceeding against the assignor; but as this had been rendered impracticable by his withdrawal, without any fault in the indorsee, the contract of indorsement had become absolute by the impossibility of performing the condition annexed,—*of suing in one of our own courts.*

---

[*] 2 Porter's R. 456.

The first question does not arise in the case before us, and it remains to inquire, how far the second is applicable to the charge of the court, upon the facts disclosed in the bill of exceptions. By the third section of the act of eighteen hundred and twenty-eight, it is provided, (as already shewn,) that notice of non-payment shall only be required on bills of exchange and notes payable in bank. The paper on which the defendant is sued, does not come within that section; because no particular place is appointed on its face for its payment. Nor does it come within the *proviso* of the second section; because the obligors resided without the State, at the time of the indorsement, and have never been within the same since that period, so that no suit could have been brought against them in any one of our courts. The only provision of the statute, then, that can be applied, is so much of the second section as directs that all contracts in writing (not specifically enumerated in the first section,) for the payment of money or property, or performance of any duty, shall be assignable as theretofore, and the assignee shall maintain such action thereon, as the assignor could have done. The mode of assignment previously authorised, was under the act of eighteen hundred and twelve, and by indorsement. Thus it is shewn that the plaintiff acquired a legal title from the defendant, to the paper in suit—that the statute gives him an action against the maker, but is silent as to any remedy against the indorser; we will now inquire what are the rights of such an indorsee against an indorser, and what steps he is to pursue, to make them available.

Let it be premised, that there is no pretence that the defendant practised a fraud upon the plaintiff, either in concealing truth, or suggesting falsehood; on the contrary, he advised him of the place of the obligors' residence, when he transferred to him their bond. The case is, then, one of contract, unaffected by extraneous circumstances. It has been seriously questioned, whether at common law, the mere indorsement of a note

or bond, created a contract by the indorser to pay it, if the maker or obligor did not. The Supreme court of New Jersey, in *Garretsie vs. Van Ness,** decided that an assignor (without fraud, deceit, express warranty, or special undertaking) of an instrument not negotiable by the law merchant, was not responsible to the assignee, though the principal debtor proved insolvent.† But in *Mackie's executor* vs. *Davis,*‡ the Court of Appeals of Virginia, in construing a statute of that State, similar to that part of the act of eighteen hundred and twenty-eight, which applies to this case, held that the assignor of a bond is liable to the assignee, who having used due diligence to recover the money from the obligor, has failed to do so. And the Court of Appeals of Kentucky, in expounding an act of the Legislature of that Commonwealth, almost a literal copy of the Virginia law, re-affirm the case of Mackie vs. Davis,—*Smallwood* vs. *Woods,*§—and these cases have been followed by an unbroken current of confirmatory decisions in both States.

It will be apparent from a comparison of the statute of eighteen hundred and twenty-eight, with the statutes of Virginia and Kentucky, and the decisions of their courts upon them, that our Legislature must have had in view the law in regard to the assignment of bonds, &c. as it was understood in those States. Under this impression, it is certainly proper to draw aid from these sources of information, to lead us to a correct conclusion. We then think it is competent for the assignee of a bond, &c. situated as the plaintiff, to sue his assignor, if he has used due diligence to obtain payment from the obligor, &c. and has failed. If the assignor was insolvent, so that a suit would be unavailing, its prosecution might be dispensed with; but without this or some other reasonable excuse, it could not be pretermitted with safety. What would be due diligence in

---

* 1 Penn. R. 20.    † 1 Penn. R. 158.
‡ 1 Wash. R. 219.    § 1 Bibb's R. 542.

such case, would of course be a question to be determined by the jury, under the instructions of the court, as to the law.* But we consider it clear, upon authority, that unless there was an effort to coerce payment from the obligor, &c. or some satisfactory reason furnished for the neglect to make it, the assignor could not be charged.

The present case is clearly distinguishable from that of Woodcock vs. Campbell. Here, (as has been already shewn) the plaintiff became the indorsee of paper, with the full knowledge that the obligors resided without the State, and with distinct information of the place of their residence; so that the contract of the defendant could not have been made, with a view to the diligence required of assignees, by the *proviso* of the second section of the act of eighteen hundred and twenty-eight. In the case cited, the obligor was living in the State at the time of the assignment—the contract was clearly made with a reference to our laws, and imposed upon the assignee the necessity of a suit against him, in order to charge his assignor. But this condition became impossible to be performed by the removal of the obligor beyond the limits of the State; an act to which the assignee had not contributed, and its performance being placed beyond the power of the party on whom it was imposed without his default, the undertaking of the assignor was held to have become absolute.

In *Smallwood* vs. *Woods*,† it was determined under the statute of Kentucky, that the assignee would be excused from the employment of the compulsory process of the law against the obligor, if he was out of the Commonwealth; and such absence was not contemplated by the parties at the time of the assignment—*see also* *Oldham* vs. *Bengan;*‡ *Clay* vs. *Johnson.*§

The case of *Cavanauh* vs. *Tatum,*‖ which was cited by

---

* 1 Wash. R. 219.    † 1 Bibb's R. 542.    ‡ 2 Litt. R. 134--5.
§ 6 Mon, 641.    ‖ 4 Stew. & Por. R. 204.

the plaintiffs counsel, does not oppose the principles we have laid down—*see also Roberts* vs. *Kilpatrick.**

We are therefore of opinion, that for the failure of the plaintiff to use diligence to collect the bond of the obligors, or to prove their insolvency, the charge of the Circuit judge to the jury was correct, so far as it held the necessity of a suit against them; and the alternative of the charge being immaterial under the evidence in the cause, the judgment must be affirmed.

---

* 5 Stew. & Por. R. 96.