## HOLT v. MOORE.

**1.** Where the assignor of a note is Judge of the County Court of the county where the suit must be brought against the maker, it will be sufficient to charge the assignor to bring such suit to the next Circuit Court of the county.

ERROR to the Circuit Court of Pickens.

Assumpsit by the plaintiff in error, as assignee, against the defendant in error as assignor of a promissory note executed by E. H. Moore & Co.

The declaration, which is in the usual form, charges that suit was brought against the makers " to the first Court of the aforesaid county, of the residence of said E. H. Moore & Co. to

which a writ could properly be made returnable, to wit: to the October term of the Circuit Court of Pickens county, A. D. 1839," and proceeds to aver that judgment was obtained, and that the writ of *fieri facias* which issued thereon was returned no property found.

The defendant pleaded, first, non assumpsit—second *actio non*, &c. because he says that the said plaintiff did not bring his suit against the makers of the said note mentioned in the declaration, to the first Court of the county where they reside, to which suit could be brought, to wit: to the County Court of said county, which was holden on the fourth Monday in July, 1839, and this, &c.

To the second plea the plaintiff replied, "*precludi non*, because though true, it is that suit was not brought to the County Court, as in the said plea mentioned, yet the said plaintiff says that the said defendants were at the time of the maturity of said note and at the time when suit should have been commenced to the County Court aforesaid, and for a long time before and after, the sole and presiding Judge of the said County Court, and the plaintiff avers that suit was brought to the first Court after the maturity of said note to which a writ could properly be made returnable, and this, &c.

To this replication the defendant demurred, and the Court sustained the demurrer, and rendered judgment for the defendant, from which the plaintiff prosecutes this writ, and assigns for error the judgment of the Court on the demurrer.

CRABB & COCHRAN, for plaintiff in error.
ELLIS, contra.

ORMOND, J.—The act of the Legisture by which this proceeding is regulated, requires, in the case of assignment of paper not mercantile, that to charge the assignor, suit must be brought to the first Court to which it can be brought against the maker of the assigned paper, prosecuted to judgment, and a return by the sheriff of no property found.

In the exposition of this statute several exceptions have been engrafted upon it, as that the suit may be dispensed with against the maker, when from his absence from the State suit is impossible. [5 Stewart and Porter, 96; 2 Porter, 456.]

Strongly as we feel indisposed to make another exception to the statute, we feel compelled to allow it in this case, from the thorough conviction that the Legislature could not have intended that one should sit in judgment upon his own case, or upon the trial of a cause in which he had a direct interest.

This case has been supposed by elementary writers, by way of exemplifying a general rule. Thus, Blackstone in his commentaries, to express the transcendant power of parliament, while he admits the indecency and gross impropriety of such a law, says that if the intention to confer such a power is clear and plain, so as to leave no doubt of the intention of the Legislature, no Court has power to defeat such intention. [1 Bl. Com. 91.] On the other hand, Mr. Justice Chase, in the case of Calder v. Bull, [3 Dall. 386,] scouts the idea that such a law should be enforced by the Courts: "That it was against all reason and justice for a people to entrust a Legislature with such powers, and therefore it cannot be presumed they have done it. The genius, the nature and the spirit of our State governments amount to a prohibition of such acts of legislation, and the general principles of law and reason forbid them."

We do not however consider that the power of the Legislature to pass a law authorizing a Judge to try a cause in which he is interested, is in question here, as no such attempt has been made. It cannot be presumed that the Legislature intended that the suit which was required to be brought should be commenced in a Court, the sole Judge of which was directly interested in the event. It cannot be presumed, because such suit would be nugatory, and therefore falls within the admitted exception of the non-residence of the maker. It is supposed that the Judge of the County Court would transfer the cause to the Circuit Court. It is true that by statute, [Aikin's Dig. 246,] when the Judge of the County Court is related, by affinity or consanguinity to either of the parties to the suit, or has been employed as counsel, that the suit shall be transferred to the Circuit Court, and although no power is expressly given to transfer a cause when the Judge is interested in the event, it would doubtless be within the spirit of the act, as provision is made for such a case when the Judge of the County Court is

setting as a Court of *ordinary* for the settlement of estates.
[Aik. Dig. 253.]

But as we have repeatedly held that the Legislature did
not require suit to be brought when the suit would be of no
avail, why commence a suit where it could not be tried, but
must be transferred to another forum? Such, in our opinion,
cannot be presumed to have been the intention of the Legisla-
ture—the manifest design was to provide, in *lieu* of demand
and notice, a speedy pursuit of the maker, to the presumption
of insolvency afforded by the return of " no property found,"
to the execution issued on the judgment against him. This
has been done in this case, and if not within the letter of the
act, is certainly within its spirit and meaning, and fully within
the principle of the adjudged cases of admitted exceptions to
the law.

It is, however, insisted that the Judge of the County Court was
not necessarily interested in the suit, or that if he had an in-
terest, it was not that judgment should be delayed, but that it
should be speedily obtained against the maker. If he had an
interest in the event, it is certainly unimportant which of the
parties litigant it was to prejudice or benefit; but no aspect of
the case can be supposed in which his interest would not be
direct. If the maker should desire to make an off-set against
him as payee, he would have a direct interest in defeating it,
as the success of the set-off would be to charge him on his en-
dorsement. If the defence was payment to the assignee, it
would be his interest that the defence should succeed, as there-
by he would discharge himself altogether. If the defendant
was insolvent, he would be interested to prevent a judgment
from being obtained, as until judgment was obtained against
the maker, no suit could be commenced against him; and if
solvent, his interest would be to hasten the obtaining the judg-
ment, lest the maker might, from the vicissitudes and changes
so common in the country, become unable to pay if delay
should supervene.

It is unnecessary to pursue this subject to ascertain the
*quantum* of interest which the defendant might have had; the
purity of the judicial station will not tolerate such inquiries,
nor the known infirmity of human nature permit one to fill at
the same time such incompatible stations as party and Judge.

It is sufficient that the defendant was interested in the event—
The title was derived from him, and he had guaranteed that
by the use of due diligence, the money could be made from
the maker, and whether this responsibility was small or great
it incapacitated him from setting as Judge in the cause.

It is scarcely necessary to add that it is not presumed that
the Judge in this case would have proceeded to try the cause,
or that a doubt can be entertained that he would have refused
to sit in the cause, and would have transferred it to the Circuit
Court.

Whether the law as here laid down would apply, if the as-
signor were not the sole Judge authorized by law to preside in
the Court to which the suit is brought, it is not necessary now
to determine

Let the judgment be reversed and the cause remanded.


COLLIER, C. J.—

The second section of the act of 1828, declares, that all con-
tracts in writing for the payment of money, &c. shall be assign-
able, &c. and the assignee may maintain an action thereon, &c.
" *Provided,* suit be brought to the first Court of the County
where the maker resides, to which suit can be brought, and if
he fail to sue the maker to the first Court, as herein provided
for, the indorsee shall be discharged from liability, unless suit
shall be delayed by his consent.

The statute of 1829, (one of the objects of which was to ex-
plain that of 1828,) enacts, "That part of the *proviso* in the
second section of the before recited act, which requires suit to
be brought to the first Court, shall be construed to be, that
suits be brought to the first Court to which the suit can pro-
perly be made returnable." [Aik. Dig. 330.]

This explanation was entirely unnecessary, for it never
would have been supposed that the law intended the maker
should be sued to the term of a Court to which process could
not have been regularly returned, yet it serves to show the
strictness with which the Legislature construed its own act, and
should rather limit than extend judicial discretion."

It is certainly true, that in the interpretation of all statutes,
the legislative will, as ascertained from the terms employed,

should be effectuated. But Courts must not, in order to give effect to what they may suppose to be the intention of the Legislature, put upon the provisions of a statute a construction not supported by the words, though the consequence should be to defeat the object of the act. [Rex v. Stokedamerel, 7 B. &. C. Rep. 569.] Where words of unequivocal import have been employed, it would be dangerous to hold that the Legisture did not mean what it has expressed. The correct course in all cases where the intention of the Legislature is brought in question, is to adhere to the words of the statute, construing them according to their nature and import. [Rex v. Ramsgate, 6 B. & C. Rep. 712.]

In Rex v. Barham, [8 B. & C. Rep. 104,] Lord Tenterden said, " Our decision may, perhaps, in this particular case, operate to defeat the object of the statute; but it is better to abide by this consequence than to put upon it a construction not warranted by the words of the act, in order to give effect to what we may suppose to be the intention of the Legislature." Upon another occasion the same learned Judge said, " The words may probably go beyond the intention, but if they do, it rests with the Legislature to make an alteration; the duty of the Court is only to construe and give effect to the provision." [Notley v. Buck, 8 B. & C. Rep. 164.] In considering the game laws, Mr. Justice Ashurst remarked, "It is safer to adopt what the Legislature have actually said, than to suppose what they meant to say. The heir apparent they have qualified from a supposition the esquire was so already. I cannot think it was their intention purposely to exclude the father, but in fact they have done it." [1 T. Rep. 52; see also, Rex v. Turvey, 2 B. & A. Rep. 522; Rex v. Bray, 3 M. &. S. Rep. 20; Rex v. Inhabitants of Great Bentley, 10 B. & C. Rep. 527.]

In Brandling v. Barrington, [6 B. & C. Rep. 475,] it was held, that to bring a case within the statute, it should not only be within the mischief contemplated by the Legislature, but also within the plain, intelligible, import of the words of the act of Parliament. [See also 1 T. Rep. 52 ; Edrick's case, 5 Co. Rep. 118.]

To these citations might be added many others, in which Judges have expressed themselves in strong terms against a latitudinous construction of statutes, under the pretence of giv-

ing effect to the will of the legislature. It has been often lamented that the words of the statutes of frauds and limitations should not have been more closely followed in their construction, and the current of decision at the present day, is to gather their meaning from the language employed, rather than indulge in perplexing conjectures of the evils and objects intended to be remedied.

In the present case it is not pretended that the makers of the note might not have been sued in the County Court, but it is insisted that as the case could not have been tried by the Judge of that Court, the plaintiff was under no legal obligation to commence his suit there. This argument, in my opinion, cannot be maintained. The Legislature have in express terms declared, that the indorsee of paper, such as that in question, shall sue the maker "to the first Court to which the writ can properly be made returnable," and it is not for the Court to say that this requisition is not peremptory, but is governed by circumstances remote and hypothetical. It is conceded that no Judge should preside at the trial of a cause in which he is interested, but that a statute declaring him competent would be void, where it does not conflict with the constitution, is what I do not admit. I am aware that such a doctrine is avowed by Lords Coke, Hobart and Holt, and Mr. Justice Chase, but it has received no support from any other source. The true rule upon the subject is that laid down in my opinion in "The Matter of John L. Dorsey," [7 Porter's Rep. 416,] viz: "If absurd consequences seem to grow out of a statute, the Judges ought in decency to conclude that the consequence was not foreseen by the Legislature, and only *quoad hoc* to disregard it." [See 1 Bl. Com. 91.]

But the question is not whether an act of the Legislature, if carried out, would require a Judge to decide his own case. It could not be known that the makers of the note would have resisted a recovery, if they did not, it would have been entirely competent for the Judge to render a judgment against them, and if they did, it was his duty, under the statute, to transfer the case to the Circuit Court. That the Judge would have performed this duty with promptness cannot be questioned—his oath of office obliged him to do it.

Suppose a suit had been brought against the makers in the

County Court, and an order for its transfer made to the Circuit Court, would it not when transferred have been placed on the trial docket? The pleadings, without an order extending the time would have been made up in the County Court, at the appearance term, so that it would, when removed after the close of that term, have been entitled to a place on the trial docket; and in this way judgment would be obtained sooner than if such suit had been brought in the Circuit Court.

The idea then, that the defendant being a Judge of the County Court, was a sufficient reason for dispensing with the express requirement of the statute to sue the makers of the note to the first Court to which the writ could have been returned, is wholly inadmissible. 1. Because the act directs that the suit shall be thus brought. 2. By the failure to comply with the statute, the indorsers responsibility is increased, or rather prolonged, in proportion to the time for which the indorsee omits to sue the makers.

Without attempting to review the cases which have been decided on the acts of 1828 or 9, it may be quite enough to say that none of them go to the extent of the exception now made to the mandatory terms of these statutes. [Cavanaugh v. Tatum, 4 Stew. & P. Rep. 204; Roberts v. Kilpatrick, 5 Stew. & P. Rep. 96; Woodcock v. Campbell, 2 Porter's Rep. 456; Ivey v. Sanderson, 6 Porter's Rep. 420; Rathbone, use, &c. v. Bradford, 1 Ala. Rep. N. S. 312; Riddle v. Rourke, id. 394; Person v. Mitchell, 2 id. 736.]

The principle of this exception is so broad that it is difficult to define its limits; and not being prepared to acquiesce in its correctness, I am of opinion that the judgment of the Circuit Court should be affirmed.