# Bradley, Wilson & Co. *v.* Patton, Donegan & Co.

### *Action on Promissory Note, by Indorsee against Indorser.*

1. *Liability of indorser of note not payable in bank.* — Under the provisions of the Code regulating the liability of indorsers or assignors of notes not payable in money at a bank or banking house (Rev. Code, §§ 1851–54), which are substantially the same with the former statutes as judicially construed by this court, the fact that the maker is a non-resident at the time of the execution and indorsement of the note, and thence continuously up to the commencement of the suit, and has a known place of residence in another State, excuses the non-institution of a suit against him to the first term of the court next after the indorsement, but does not excuse the failure to demand payment of him, and to give notice of non-payment to the indorser, or other proper diligence.

2. *Competency of parties as witnesses, in actions by or against surviving partners.* — In an action by or against surviving partners, a party may testify as to conversations or transactions with the deceased partner: such a case does not come within the exception to the statute (Rev. Code, § 2704) as to suits " by or against executors or administrators."

APPEAL from the Circuit Court of Madison.
Tried before the Hon. W. J. HARALSON.
VOL. LI.

[Bradley v. Patton.]

This action was brought by James I. Donegan and W. B. Tabor, as surviving partners of the late firm of Patton, Donegan & Co., against Bradley, Wilson & Co. ; and was founded on the defendants' indorsement in blank of a promissory note, of which the following is a copy : —

" $6,575.60.          SUNFLOWER, Miss., 10 *Feb.* 1862.
" On or before the 1st day of January, 1863, I promise to pay Bradley, Wilson & Co., or order, at their office in New Orleans, La., sixty-five hundred and seventy-five $\frac{60}{100}$ dollars, for value received, with interest at the rate of eight per cent. *per annum* after maturity until paid.          H. C. CHAMBERS."

On the trial, as appears from the bill of exceptions, the plaintiffs read the note and indorsement to the jury, and then proved that, " when said note was executed by said Chambers, and when said indorsement was made by defendants, and continuously from the execution of said note to the institution of said suit, the said Chambers resided in Mississippi ; and that this fact was known, both by said plaintiffs and said defendants, when said note was indorsed by defendants to plaintiffs, which occurred at Huntsville, Alabama, on or about the 21st January, 1867." In reference to these facts, the defendants asked the court to charge the jury, " That if they found, from the evidence, that the said Chambers lived in Mississippi when said note was executed by him, and when said indorsement was made by defendants, and continuously from the execution of said note to the institution of this suit, and that these facts were known to plaintiffs and defendants when said note was indorsed by defendants, then the plaintiffs were not entitled to recover, unless they proved some demand of said Chambers, or some effort to collect said note from him before this suit was brought." The court refused to give this charge, and the defendants excepted to its refusal.

During the progress of the trial, as the bill of exceptions also shows, the defendants introduced Joseph C. Bradley as a witness, who was a member of said firm of Bradley, Wilson & Co., and offered to prove by him a conversation between himself and Charles H. Patton, who was then a partner in the house of Patton, Donegan & Co., but died before the institution of this suit, " in which conversation it was agreed between said Patton, acting for Patton, Donegan & Co., and said witness, acting for Bradley, Wilson & Co., that said Patton, Donegan & Co. would take and receive said note, without the indorsement of Bradley, Wilson & Co., in discharge and satisfaction of their liability for said Chambers. But the court refused to permit the said witness to testify to any conversation

[Bradley v. Patton.]

or agreement had or made between him and said Patton, on the ground that the same was incompetent evidence, under section 2704 of the Revised Code; to which said ruling defendants excepted."

The refusal of the charge asked, and the exclusion of Bradley's proposed testimony, are now assigned as error.

L. P. WALKER, for the appellants. — 1. The court below erred in the refusal of the charged asked. To fix the liability of the indorser or assignor, the general rule is, that a demand must be made of the maker, or a proper excuse be shown for the omission. If the maker has absconded, that fact will excuse; if he has no known residence, or place at which the note can be presented for payment, that will excuse; and if he removes from the State after the note is given and indorsed, that will excuse. Story on Prom. Notes, § 237; Chitty on Bills (10th Amer. ed.), 354, note 1. These several grounds of excuse are independent of statutory provisions, and have been ingrafted on the general law by their natural justice; and in each of them the exception is founded on the new and changed condition of the maker. 3 Denio, 145. But, in this case, there has been no change in the condition of any of the parties, no mistake, no fraud, no concealment, no misapprehension of fact, no ignorance of the maker's place of residence. The indorsee received the note with full knowledge of all the facts, and nothing has occurred to relieve him from the performance of the condition, upon which the liability of the indorser depends. Edwards on Bills, 237–8; 3 Denio, 145; 5 Barbour, 501; 1 Comstock, 321; 24 N. Y. 28; 30 N. Y. 309. These principles were recognized by this court in several cases decided before the adoption of the Code. *Bristow & Rosser* v. *Jones*, 1 Ala. 159; *Ivey* v. *Sanderson*, 6 Porter, 420; 5 Ala. 286. These decisions have been substantially incorporated into the Code, and made part of the statute itself. The declaration of the judge who delivered the opinion of the court in *Goggins* v. *Smith's Adm'r* (35 Ala. 686), that "the effect of the statute is to render the liability of the indorser primary and absolute, whenever the maker has no known place of residence in the State," is mere *obiter dictum*, and neither required nor justified by the facts of the case. To give to the statute an effect so revolutionary and iconoclastic would make it undermine and destroy a structure built by the wisdom and learning of ages of judicial criticism and construction, and founded on principles of natural justice and equity. The statute must rather be construed in the light of the previous decisions, the substance of which constitute the statute itself.

VOL. LI.

[Bradley v. Patton.]

2. The testimony of Bradley was improperly excluded. No executor or administrator was a party to the suit, or had any interest in it ; nor could the record of this suit be used, so far as the facts disclose, to promote or defeat any right of action in any executor or administrator. The case does not fall within the exception to the statute, on which the ruling of the court below was based; and there is no authority for extending the operation of that exception by judicial construction. The statute itself is entitled to a liberal construction, but the exception must be strictly construed, as it has been in several cases. *O'Neal* v. *Reynolds*, 42 Ala. 198; *Avery's Executor* v. *Avery*, at January term, 1873.

BEIRNE, HUMES & GORDON, *contra.* — 1. To bind the indorser, the indorsee after maturity is required to use the same diligence as the indorsee before maturity. 1 Brickell's Digest, 265, § 203. By parity of reasoning, the same excuse for the failure to sue applies equally to both. The indorsement was made in Alabama, and the laws of Alabama govern the liability of the indorsers. *Woodcock* v. *Campbell*, 2 Porter, 456 ; *Lowry* v. *Western Bank of Georgia*, 7 Ala. 120. That the note sued on is non-commercial paper, see *Winter* v. *Coxe*, 41 Ala. 207 ; Rev. Code, § 1833. Before the adoption of the Code, if the excuse for the omission to sue the maker of such a note was his non-residence, the declaration must have averred, not only the non-residence, but the indorsee's ignorance of it when he took the note ; because, if the indorsee knew the fact of such non-residence when he took the note, he was required to use due diligence to collect it out of the maker. *Bristow & Rosser* v. *Jones*, 1 Ala. 159; *Ivey* v. *Sanderson*, 6 Porter, 420. Since the adoption of the Code, it is only necessary to allege and prove, as an excuse for the omission to sue, that the maker had no known place of residence in the State, from the maturity of the note to the commencement of the suit; because, in that case, the statute renders the liability of the indorser primary and absolute. Rev. Code, § 1854 ; *Goggins* v. *Smith's Adm'r*, 35 Ala. 683 ; *Hays* v. *Myrick*, 47 Ala. 344. As was said in the case cited from 35 Ala., " The language of the statute being clear and unambiguous, it is not for us to speculate about its meaning and spirit."

2. The exception of suits by or against executors or administrators from the general rule allowing parties to testify as witnesses for themselves, was intended to apply to all cases in which the liability of the decedent or his estate, or a benefit to his estate, is sought to be established. *Mountain* v. *Collins*, at June term, 1872. Whether the personal representative of the deceased, or his heirs, or his surviving partners, be the

[Bradley v. Patton.]

nominal parties to the suit, his estate is equally interested, and
the reason of the exception equally applies. Each is equally
the representative of the deceased, and cannot testify on equal
terms with the living party. In the construction of statutes,
Chancellor Kent lays down this cardinal rule : " When the ex-
pression in a statute is special or particular, but the reason is
general, the expression should be deemed general."

3. The testimony of Bradley, if admitted, would have varied
the legal effect of the indorsement. *Tankersly* v. *Graham*, 8
Ala. 247 ; *Hightower* v. *Ivey*, 2 Porter, 308 ; *Carleton* v. *Fel-
lows*, 13 Ala. 437.

B. F. SAFFOLD, J. — Section 1833 of the Revised Code
expressly subjects bills of exchange, and promissory notes paya-
ble in money at a bank or private banking-house, to the gov-
ernment of the commercial law, except so far as the same is
changed by the said Code. On all contracts assigned by writ-
ing, except such commercial paper, when the amount due is
over fifty dollars, to charge the indorser or assignor, suit must
be brought against the maker in the county of his residence,
to the first court to which suit can properly be brought after
making the indorsement or assignment. R. C. § 1851. The
holder of such indorsed or assigned contract is excused from
bringing the suit, when the maker has no known place of resi-
dence in the State. R. C. § 1854, cl. 1. In *Goggins* v. *Smith's
Adm'r* (35 Ala. 683), the note was executed in this State, by a
resident of the State, and seems to have been payable generally.
The time and place of the indorsement are not mentioned, but it
is fair to presume that the place was also in Alabama. The
maker, shortly after his execution of the note, removed from the
State, and, it may be concluded, no more had any known place
of residence within the State. The court, construing sections
1851 (1543) and 1854 (1546), held the indorsee excused for
not having made demand of the maker, or given notice to the
payee indorser, before bringing suit against the latter. *Wood-
cock* v. *Campbell* (2 Port. 456) was a similar case, and was de-
cided in the same way, though at that time the statute (Acts
of 1828-9) prescribed no such ground of excuse as the one
mentioned above. The court supplied the excuse, because
" the very language of the enactment would imply that this
requirement of suit has reference to our own internal judicial
and geographical economy." In both of these cases, it was
considered that the commercial requisition of demand and
notice of the non-payment of a negotiable note was modified
by the state law to a suit to the first court against the maker,
when such note was not payable at a bank or private banking-
house.

[Bradley v. Patton.]

In *Ivey* v. *Sanderson* (6 Port. 420), the court distinguished it from *Woodcock* v. *Campbell*, *supra*, by the knowledge which the indorsee had, at the time of the indorsement, of the maker's place of residence in another State. Judgment was given against the assignee, because he had made no effort to collect the money out of the maker, and had assigned no reason for his neglect to do so. *Bristow & Rosser* v. *Jones* (1 Ala. 159) is to the same effect.

The contract of an indorser, with and in favor of his indorsee, and every subsequent holder to whom the note is transferred, under the commercial law, is, that if, when duly presented, it is not paid by the maker, he will, upon due and reasonable notice given him of the dishonor, pay the same to the indorsee or other holder. Story on Prom. Notes, § 135. In respect to the immediate indorsee of a non-negotiable note, the indorsement will, ordinarily, create the same liabilities and obligations on the part of the payee, as the indorsement of a negotiable note. The indorser's liability is collateral only, and he cannot be treated as the maker thereof. Story on Prom. Notes, § 128, and note. In the present case, we must presume the contract of the parties to have been, either that the indorser should become primarily liable to pay the note, or that the indorsee undertook to make some effort to collect the money out of the non-resident maker. Neither of these suppositions is consistent with a suit against the maker to the first court of our State, and a return of execution "No property." Sections 1854 and 1851 of the Revised Code evidently contemplate the practicability of a suit against the maker in the State, in preserving the collateral character of the indorser's liability, and in excusing the suit, when the maker has no *known place* of residence in the State, or when, by the use of ordinary diligence, such residence cannot be ascertained. A person may reside in the State, without having a known place of residence; and he may have a known place of residence, which the holder of the contract may not be able to find in time for the first court. These statutes manifestly refer to notes made, assigned, and held by our own citizens, as was said about the requirement of the suit in *Woodcock* v. *Campbell*, *supra*. If not, as an indorsement is governed by the law of the place in which it is made, we might have one indorser defeated of his suit, because he had not sued the maker to the first court, and another, because he had done so, instead of giving timely notice, on like instruments, under the same statutes, without reference to the personal jurisdiction of the court. The grounds of excuse for not suing the maker, enumerated in R. C. § 1854, are not different from those previously decided by this court to be sufficient. It is fair to presume that they were intended to be the

[City Council of Montgomery v. Shoemaker.]

same in substance. If so, the former distinctions of cases are preserved, and the authorities above quoted are applicable now. The charge refused ought to have been given.

2. The exclusion of Bradley's testimony, on the ground of his incompetency as a witness to testify to a conversation between himself and the deceased partner, Patton, under R. C. § 2704, was erroneous. A transaction with, or statement by one partner, embraces all of the partners. *Bragg* v. *Clark*, at January term, 1874. We say nothing about the admissibility of the testimony as affecting the contract.

The judgment is reversed, and the cause remanded.

BRICKELL, J., not sitting, having been of counsel.