## BATES v. RYLAND.

1. The consent of the endorser of a note, not payable in Bank, that suit may be delayed against the maker, does not discharge the other statutory condition requiring that the maker shall first be prosecuted to insolvency.

2. Where a creditior on account of his debt, accepts the note of a third person from, and endorsed by his debtor, the creditor, upon its dishonor, is entitled to declare either on the endorsement or for the precedent debt; but in either case he is bound to shew the same degree of diligence.

3. The statutory condition that the endorser shall not be liable unless the maker is sued to the first court of the county of his residence, being waived for a specified time, is not revived at the expiration of that time. Afterwards it is only necessary to prosecute the maker to insolvency in order to fix the liability of the indorser.

4. A suit against the endorser of a note, not payable in bank, is premature, when the maker has not been prosecuted to insolvency, and when there is no fact which operates as a discharge of the condition.

5. If, however, the maker is insolvent, and dies before the holder is by law required to sue him, the creditor is then discharged, and the endorser is directly liable. *Quere*—Whether his death alone does not produce the same consequence. But the death of the maker, after suit brought, will not cure the defect.

6. A witness cannot be excluded by proving his confessions of an interest in the suit.

WRIT of error to the County Court of Mobile county.

Assumpsit. The declaration contains three counts; the first and third are against the defendant Ryland, as the indorser of a promissory note, described in the first count as made by McRae & Lang, and in the last, as made by McRae. The note is not payable in any bank, and the excuse set out in both counts, for the omission to sue the maker to the first court of the county where he resided, is, that the suit was delayed by the consent of the defendant. The second count, is for money lent by the plaintiff to the defendant.

The defendant demurred to the first and last count, and his demurrer was sustained.

At the trial, he also demurred to the plaintiff's evidence. That was as follows: A note signed McRae & Lang, by C. C. McRae, surviving partner, dated Mobile, 7th March, 1838, payable one day after date, to the order of the defendant, for 3,600 dollars, and indorsed by him. A witness proved that the defendant in a conversation with him, said he had procured some money from the

plaintiff, and gave a note for it prior to his departure from the city. The witness did not know the amount of the note. The defendant had left notes with McRae & Lang, (the indorsers of that note) to be collected, and the money to be applied to its payment. The same witness also proved, that he was present at a previous trial of this suit, and that McRae, the maker, who is now dead, then testified that the note, in evidence in this suit was given by the defendant to the plaintiff, in lieu of the other note, which was given up. That the note was drawn in this form, to enable the holder to claim interest; but he was to wait 12 months with the makers. He also testified that he, McRae, had collected the notes left with him by the defendant, prior to the suit, and had used the money. The witness further proved, that McRae was insolvent at the date of the note, and that his insolvency became notorious a short time afterwards.

The court sustained the demurrer to the evidence, and gave judgment for the defendant.

The evidence of a witness for the plaintiff, had previously been offered, and its introduction resisted, on the ground of interest. One of the interrogatories propounded by the defendant to this witness, was, whether she had any interest in the suit or claim, or would be in any manner benefited by a recovery against the defendant. This was answered in the negative. The defendant read the deposition of another witness, who stated that she had asked the witness whose deposition was resisted, if she was not interested in the money contended for in this suit, and her reply was, yes. The defendant's witness then said, she had always understood that the other witness' mother, herself and her brother, were interested; to which the other replied, that her mother, herself and James F. Bates, owned some cattle together; that James F. Bates drove the cattle to town and sold them, and that he had never made any division of the money.

A witness also proved, that the plaintiff told him he had borrowed a part of the money from his sister (the witness whose deposition was resisted) to lend to the defendant, and that he was responsible to her for it.

Upon this evidence, the court rejected the deposition, and the plaintiff excepted.

The sustaining the demurrers to the first and third counts.

The judgment upon the demurrer to evidence—and,

The rejection of the deposition was now assigned as error.

Phillips, for the plaintiff in error—made the following points:
1. Under the statutes, prescribing how an indorser shall be made liable, suit to the first court against the maker, and a return of no property, is put instead of demand and notice by the law merchant. The act contemplates that the parties may agree otherwise, and allows consent as an excuse for the omission to comply with the requisitions. So, other circumstances have been held to excuse suit at the first court, or afterwards. [4 S. & P. 408; 2 Ala. Rep. 736.]

It is true, a return of no property, is mentioned in the statutes; but it is presumed, the fact of insolvency is the material matter upon which the indorser's liability becomes fixed; and it would be difficult to avoid the consequences of an admission of insolvency.

2. The giving of the note in this case, was no discharge of the pre-existing contract. It was the substitution of one promise for another, without any new or distinct consideration—consequently, as soon as the note of McRae was dishonored, or remained unpaid, after the time given with the consent of the defendant, the plaintiff was entitled to sue on the original contract—[6 Shepley, 250; Hughes v. Wheeler, 8 Cowen, 77; Raymond v. Merchant, 3 ib. 147]—unless it was otherwise expressly agreed. [Page v. Bank, 1 McCord, 449; 7 Wheat. 35; 2 Caines, 117; 6 Term, 52; 8 ib. 451; 7 ib. 64; 9 Conn. 23; 3 H. & J. 193; 5 John, 68; 2 John. Ca. 438; 7 John. 313; 9 ib. 310; 2 Ld. Raymond, 928; 5 M. & S. 62; 4 Gill & J. 307.]

3. The deposition was improperly rejected upon the confession of interest in the witness; even if any such confession of interest is clearly proved. [5 Mass. 261; 8 ib. 487; 2 J. J. Marsh. 188; 4 ib. 116; 4 McCord, 310; 6 Shepley, 412; 5 Ala. Rep. 35.]

Campbell, contra, insisted—1. That two conditions are imposed on the holder of a note, not payable in bank, before an indorser can be charged. 1. A suit against the maker at the first court. 2. A recovery of judgment against him, and a sheriff's return of no property: each of these conditions may be waived or discharged without affecting the other. [4 Ala. Rep. 394; 2 ib. 736.]

2. The note of McRae & Lang was an additional security to the plaintiff; and the precedent debt of the defendant for the loan, was thereby extinguished; therefore, suit could be brought only

Bates v. Ryland.

upon the contract of indosement. [21 Wend. 450; 1 Hill, 516; 2 Porter, 401.]

GOLDTHWAITE, J.—The case now to be considered, involves the construction of the several statutes defining the liability of indorsers of promissory notes not payable in bank; and this construction will be best come at by a collation of the original statutes.

The act of 1828, was the first which made a distinction between notes payable in and out of bank; and, with respect to the latter class, provided that the assignee might sue the maker and indorser in the same action, if suit was brought to the first court of the county where the maker resided; but, if the assignee failed to join the indorser in the action, he was not permitted to sue the indorser until the maker was prosecuted to insolvency; which was to be proved by a return of *nulla bona*, or other sufficient proof. If the assignee failed to sue the maker to the first court, then the indorser was discharged from liability, unless the suit against the maker was delayed by his consent. [Acts of 1827–8, p. 37.[

The act of the next session, takes from the assignee the right to maintain a joint action against the maker and indorser, and provides, that the return of *no property found,* upon an execution against the maker, shall be sufficient evidence of his insolvency to authorise a recovery against the indorser. [Act of 1828–9, p. 59.]

It will be seen, therefore, that the act of 1827, as controlled by the subsequent amendment of it, imposes two conditions as preliminary to the liability of the indorser; the first is, that a suit against the maker shall be brought to the first court of the county where he resides; the second is, that the maker shall be *prosecuted* to insolvency. If the first of these conditions is not performed, the indorser is discharged, unless the suit against the maker is delayed by his consent. There is nothing whatever in the statute, which warrants the inference that the consent of the indorser to the delay of suit against the maker, shall relieve the holder from a compliance with the other condition. Nor is there, in our judgment, any sufficient reason to engraft such a construction on the statute. The legislature has thought proper to declare that there shall be no remedy against the indorser until the maker has been *prosecuted* to insolvency, and the consent of the for-

mer, that the suit against the latter may be delayed, connot invest the assignee with a new and distinct right, independent of his contract; which would be the effect, if the liability of the indorser, instead of being conditional upon the prosecution of the maker to insolvency, was to become direct and absolute at the expiration of the time given by the holder to the maker. It is true, that under peculiar circumstances, a very liberal construction has been given to these enactments, so as to let in the remedy against the indorser, when, from the occurrence of some fact, subsequent to the indorsement, it is impossible to perform the conditions within the State. [Roberts v. Kilpatrick, 5 S. & P. 96; Woodcock v. Bennet, 2 Porter, 456.] But the construction given under such circumstances, has no application to the present case, when there is no pretence that the condition might not have been performed.

Our conclusion on this point of the case, then is, that the consent of the indorser, that the suit against the maker might be delayed, did not discharge the other condition upon which his liability depends; and that, notwithstanding the consent, it is incumbent on the assignee to *prosecute* the maker to insolvency, unless that condition in the contract is otherwise discharged. The consequence of this conclusion is, that the judgment on the demurrer to the counts, is free from error.

2. The next question is that which arises on the demurrer to the evidence The plaintiff insists the proof shows that the note executed by McRae was no discharge of the pre-existing liability of the defendant. What this pre-existing liability was, is very clearly shown by the statement of the testimony given by McRae at the previous trial. When the note, now sued on, was made, another was given up, to which the defendant was the maker and McRae & Lang indorsers. That note was, doubtless, for money lent by the plaintiff to the defendant, but there is no evidence showing, or tending to show, that the one sued on was founded on the same consideration. McRae had collected money for the defendant, and used it, instead of paying the note which had previously been given to the plaintiff; and the money thus used by McRae, was the consideration for which the note sued on was given. The actual consideration of the note, as between McRae and the defendant, is not, however, a material inquiry, as it is clear that the note was passed to the plaintiff in lieu of the other note, and could have been given in evidence under the count for money

lent, if the effect of the new contract was otherwise than to discharge or suspend the former one. We shall, therefore, examine the evidence in this point of view.

Notwithstanding the use, by McRae, of money which he was to apply to the payment of the note made by the defendant in the first instance, yet the latter continued liable to the plaintiff, and might have been sued immediately; instead of this course being taken by the plaintiff, the parties met, the new note is transferred and the old one given up or cancelled. The new note was drawn at one day after date to enable the plaintiff to draw interest, but the agreement was to give the maker twelve months to pay it. Under these facts, nothing is more clear than that the creditor, on account of the previous indebtedness of the defendant, accepted from him the note of McRae, without any stipulation or understanding with respect to the manner in which it should operate on the existing claim. It, therefore, becomes necessary to inquire, what consequences flow from these acts of the parties.

In England, the effect of taking a note, under such circumstances, is that the creditor cannot proceed for the original debt without showing the use of due diligence to obtain payment of the substituted note, and notice to the party of its dishonor — [Chitty on Bills, 8 ed. 198, and cases there cited.] Mr. Justice Story lays down the same doctrine, in very broad terms, as the recognized law in this country. [Story on Bills, 127, §112.]— The supreme court of New York seems to go farther, and held, that the original debt is gone by the acceptance, on account of it, of the note of a third person indorsed by the debtor, so that no remedy whatever can be had except on the indorsement. [Frisbee v. Larned, 21 Wend. 452.] If we are correct in supposing this to be the effect of the decision just cited, it cannot, as it seems to us, be reconciled with the English decisions; for there, it is certain, that a suit is maintainable upon the original consideration; and, in a modern case, such was held to be the rule, although the bills, received on account of the consideration sued for, had been passed off to others, upon showing that they had been taken up by the plaintiffs after being dishonored, and were then in the hands of their agent abroad. [Hadwin v. Mendizabell, 10 Moore, 477.] So, too, in Kearslake v. Morgan, [5 Term, 513,] which is the leading case, it is conceded that a plea, to an

action for the original consideration, asserting the note of a third person had been accepted on account of the debt, would be well answered by a replication that the note had been dishonored and notice duly given. These authorities show, very conclusively, that it is immaterial whether the action is founded on the precedent debt, or on the note or bill received on account of it, as, in either case, the plaintiff is bound to show due diligence; and, when the suit is for the original consideration, to also show that the note indorsed to him yet remains his property.

The examination thus made, leads us to the opinion that the plaintiff here is entitled to declare for the precedent debt or consideration, but he is not entitled to a recovery upon it without showing the same degree of diligence as is necessary to charge the defendant on his indorsement. Independent of authority, we think this conclusion can be supported by sound reasons. If the note was indorsed to and owned by a third person, he would have no other rights than such as accrued to him as indorser of the paper. As these rights depend almost entirely, as against the indorsers, upon the exercise of diligence, once gone by *laches*, they cannot be revived by coming into the possession of a former indorser. If *laches* will discharge an indorser who receives money as the consideration of his indorsement, the same reason applies with equal force when the consideration is a precedent debt, as it is impossible to say that he may not be as much injured by the omission of due diligence in the one case as in the other.

3. It is true, the diligence required of the holder of a note is widely different, under our statutes, from that called for by the commercial law; but the difference does not, in our judgment, affect the principle on which the liability depends. Under both systems, the contract of the indorser is conditional, and not absolute. Under the one, demand of payment of the maker and notice to the indorser, is the condition; and under the other, a suit prosecuted to insolvency against the maker; and, also, that such shall be commenced at the first term of the court where the maker resides, unless delayed with the consent of the indorser. In the present case, the evidence was sufficient to authorize the inference, that the suit against the maker was delayed, with the defendant's consent, for 12 months; and the condition required by the statute, in this respect, being waived, was not revived at the expiration of that period: it was necessary only to prosecute to

insolvency at some time after the expiration of that given as delay.

4. The evidence demurred to, does not show the existence of any suit against McRae, or McRae & Lang as the makers of this note; consequently, there is nothing from which to infer that the second condition imposed by the statute, has been performed; nor is there any peculiar circumstance exhibited which leads to the conclusion, that this condition might not have been performed at the time when this suit was instituted. We infer, therefore, that the suit was prematurely commenced, whether the remedy is considered as on the note or as on the original debt.

5. The evidence, however, discloses the fact that McRae is now dead, and was insolvent soon after making the note. If he alone is bound by this note as maker, we think there is no question that the concurrence of his death and insolvency would be a discharge of the statutory condition. Indeed, it may be deserving of serious consideration, whether the mere intervention of the death of a maker of a note, does not produce the same consequences to the indorser, inasmuch as it becomes impossible thereafter, to comply with the condition imposed by statute. The death of the maker of the note having occurred subsequently to the commencement of this suit, does not cure the defect in the title to sue. The rights of the parties must be examined as they were when the suit was instituted; and, as we have shown, being then premature, it cannot be sustained by the occurrence of a fact, the existence of which, at its commencement, would have authorized the suit.

6. Upon the question raised in regard to the rejection of the witness, there is no conflict of decision. A witness cannot be excluded by merely showing his confessions to others that he is interested. [See cases collected in Cowan & Hill's notes, 258.] In no aspect is proof of such confessions any thing more than hearsay; and if permitted to exclude a witness, no rule would tend more effectually to prostrate justice. We place our decision on this ground, because it is perfectly clear; remarking, at the same time, that the evidence of the confession itself does not seem to establish any interest. Although the admission of the testimony of the witness possibly would not have produced a different result in the court below, yet the evidence was proper to

be left to the jury under the common count; and, therefore, for this error, the judgment is reversed.

Reversed, and remanded.