Hays v. Myrick et al.

---

## HAYS *vs.* MYRICK ET AL.

[ACTION BY ASSIGNEE AGAINST ASSIGNOR OF PROMISSORY NOTE, UNDER SECTION 2637 OF REVISED CODE.]

1. *Special plea, demurrer to; when not error.*—In an action of debt or assumpsit by the assignee against the assignor of a promissory note, if the general issue is pleaded, "with leave to give in evidence any matter that may be specially pleaded," the allowance of a demurrer to a special plea involving the same matter settled on the plea of the general issue so pleaded with leave as aforesaid, is error without injury, if error at all, and though the demurrer may have been wrongly sustained, a reversal will not be allowed for this reason.

2. *Suit by assignee against assignor of promissory note; measure of diligence required of.*—In such a suit, all the diligence necessary to bind the assignor is such as the statute requires; that is, the maker of the note must be sued by the holder to the first term of the court at which this can be done after the note falls due. And after such suit is so commenced against the maker by the holder, the continuance of the cause by consent, or other legal delay of the trial, is not such an improper suspension of the remedy against the maker as will discharge the indorser.

APPEAL from Circuit Court of Tuskaloosa.
Tried before Hon. W. S. MUDD.

This suit was commenced on the 4th day of January, 1867, and the complaint, omitting caption, &c., was as follows:

, "1st. The plaintiffs claim of the defendant two hundred and fifty dollars, as the assignees of a bond executed on the first day of January, 1859, by one James Jackson, payable to S. A. M. Wood one day after date, for two hundred and five dollars and eighteen cents, and by said S. A. M. Wood assigned, on the 11th day of September, 1860, to William H. Hays, the defendant, and by him assigned, on the 1st day of January, 1861, to the plaintiffs, upon which suit has been brought according to law to charge the maker, and judgment obtained thereon—execution issued according to law; and returned 'no property found;' which said bond, with the interest thereon, is still unpaid.

"2d. The plaintiffs claim of the defendant three hundred dollars, as assignees of a bond executed on the 17th day of February, 1860, by one James Jackson, payable to S. A. M. Wood on the 1st day of January, 1861, for two hundred and seventy-five dollars, and by said S. A. M. Wood assigned to William H. Hays on the 16th day of August, 1860, and by said William H. Hays, the defendant, assigned, on the 1st day of January, 1861, to plaintiffs, upon which suit has been brought according to law to charge the maker—judgment obtained thereon—execution issued according to law, and returned 'no property found;' which said bond, with the interest thereon, is still unpaid."

To this the defendant (appellant) pleaded "the general issue, in short by consent, with leave to give in evidence any matter that may be specially pleaded." Defendant also filed six special pleas. Issue was joined on the plea of the general issue, and a demurrer sustained to each of the special pleas. No further notice need be taken of the special pleas, as in the opinion of the court all of the defenses available under the special pleas were equally available under the plea of the general issue.

It appears from the bill of exceptions, that suit was brought in March, 1861, against Jackson, the maker of the

notes, in the circuit court of the county of Lauderdale, where he resided, it being the first court to which such suit could be brought, but the court to which the writs were returnable convened within less than twenty days after the commencement of the suits. Jackson did not appear. Regular terms of court were held in the fall of 1861, twice in 1862, and also in 1863, and also in September, 1865. Judgment by default was rendered against Jackson at the fall term, 1866, for $480.18 debt, and $232.50 damages by way of interest and costs, and execution issued thereon duly returned "no property found," April 6, 1866. At the September term, 1865, of the circuit court, plaintiffs' attorney was present, and could have taken judgment. At the spring term in each of the years 1862 and 1863 the cause was continued. No court was held at the fall term, 1862, nor at the fall term, 1863, nor at the spring or fall terms, 1864, or at the spring term, 1865.

This was substantially all the evidence.

Defendant asked the following charges in writing:

1. "That although the jury believe from the evidence that the plaintiffs brought suit against the maker of the notes as required by statute, and to the proper court, yet the endorsers or assignors will not be liable unless the plaintiffs proceeded with due diligence to take judgment and issue execution thereon against the maker, unless they be excused by one of the statutory excuses mentioned in section 1854 of the Revised Code.

2. "If the jury believe that plaintiffs could have obtained judgment at the fall term, 1861, of the circuit court of Lauderdale against the maker of the notes sued on, merely by asking for said judgment, and he failed to do so, but continued said cause, then the assignor is not liable in this action.

3. "If the jury believe plaintiffs brought suit on said note against the maker in Lauderdale circuit court in March, 1861, and though said cause was not defended, that plaintiffs did not take a judgment against the maker until March, 1866, then plaintiffs can not recover in this action.

4. "If the jury believe the evidence, they must find for the defendant.

5. "That if the jury believe plaintiffs could have had judgment 'and execution against Jackson at either of the terms of the circuit court held in Lauderdale county in the years 1862–3–5, and that the suit was wholly undefended, then it was the duty of plaintiffs to take said judgment and issue execution thereon, and unless he did so, he can not recover in this action."

Each of these charges was refused, and defendant duly excepted.

The jury rendered a verdict for the plaintiffs for $997.00 and costs.

The refusal to give the charges asked is now assigned as error, and also that the amount claimed in complaint did not authorize the finding of a verdict for $997.00 and costs, or a rendition of judgment for that amount on the verdict of the jury.

S. A. M. Wood, and Somerville & McEachin, for appellant.—The plaintiffs have lost their recourse against the defendant, Hays, who is the assignor of the note, and he is legally released from all liability, by reason of the *laches* and want of due diligence on their part in prosecuting their suit against the maker.

Sections 1851 and 1854 of the Revised Code being *in pari materia*, are clearly to be construed together. And, as to the purpose of their enactment, we may observe of them what the supreme court, in *Reese v. White*, 2 Ala. 308, observes in reference to a similar statute in Aiken's Digest, page 383, §§ 12, 16 : "These matters are evidently intended to stand in the place of demand of payment from the maker, and the notice to the endorser, which were previously required by the law merchant. It seems to have been intended, also, to establish a fixed and definite rule by which every one might easily know his own liability, or enforce his claims against others."

The statute clearly contemplates something besides the prompt commencement of the suit at the "first court."

The same diligence required by the law merchant in making demand and giving notice, is required here in "bringing the suit, *obtaining the judgment,* and issuing the execution thereon."

The bringing of suit would, of itself, involve something more than the mere issue of a summons and complaint, without the words of the statute, but the latter leaves us no room for doubt in the matter. If the bringing of suit in this limited sense is all that is required, why do the six enumerated excuses apply as well to "obtaining the judgment and issuing execution thereon"? Any other interpretation than that contended for leaves section 1854 a dead letter, without any proper legal signification. There are six excuses for not bringing suit to the first court; there are the same six excuses for not "obtaining the judgment, and issuing the execution thereon," and any want of proper diligence, or a failure to do one of these co-ordinate acts, applies with equal force to the others.

How would it comport with the purpose of the statute, or correct the evils intended to be cured, to hold that complainant could bring suit to the first court, and then wait for years before he obtained his judgment, issued his execution, and secured the *ultimatum* desired of "no property found," as a proof of the maker's insolvency?

There is an identical purpose contemplated in the old statute as it stood in Aikin's Digest, (p. 383, §§ 12, 16,) and the new as it stands now in sections 1851 and 1854 of the Revised Code. This difference is discernible, that the requirements of the Code, which are, in reality, but the incorporation of judicial interpretations of the other, are far more stringent in the exact letter.

Yet the supreme court has interpreted the old statute of 1828–30 in a manner which furnishes us a key to any doubt that can possibly arise on the point we are considering.

In *Bradford v. Bishop,* 14 Ala. 521, they say : "It is true, that the law requires no other evidence of the insolvency of the maker, than the commencement of the suit to the first term to which it can be properly brought, the recovery of judgment, then the issue of execution, and the return of

'no property' by the sheriff. But in our opinion, due diligence should be used, not only to recover the judgment, but after it is recovered, to have execution issued, and the return of 'no property' made by the proper officer. The statute does not prescribe at what time execution shall issue after the rendition of judgment, but we think the spirit and intent of the act is, that the indorsee shall use ordinary diligence in prosecuting the note to judgment, after the suit is commenced, and after judgment is rendered, in procuring the return of 'no property' on the execution; and that unreasonable delay, or negligence, in prosecuting the suit, or having the execution returned 'no property,' will discharge the indorser."

This case was, in effect, affirmed by the same court in 16 Ala. 770.

It is an important fact, that the letter of the statute in Aikin's Digest, required nothing further than that the suit should be "brought to the first court of the county where the maker resides, to which suit can be brought."—Aik. Dig. 383, § 12. It is judicial construction which applies the principle of the law merchant, that the doctrine of due diligence prevails in every step of the act that is to fix and settle the indorser's or assignor's liability.

It is clear from sections 1851 and 1854 of the Revised Code, that the plaintiffs must not only have brought suit against the maker to the first court after the maturity of the note, but that they must have used due diligence in proceeding to obtain judgment and issue execution; otherwise, that they can not recover in this suit against the assignor.

2. There was a want of due diligence on the part of the plaintiffs in not obtaining judgment in the fall of 1861, in 1862 and 1863, during which period five courts were held.

It is no objection that these courts were not legal, for the plaintiffs having chosen their own forum of litigation, are estopped from urging this defense. "So far as I know," observes Chief Justice PECK, in *Powell v. Boon & Booth*, 43 Ala. 471, "it has never been doubted, that if a party institutes a suit in a court, and prays the judgment of the

court on the case made by him, he thereby admits and acknowledges both its competency and jurisdiction. Therefore, the plaintiff in this court has, on the record, made an admission that precludes her from moving to set aside the said judgment on the ground of the illegality of the court, * * * ·or its want of jurisdiction."

Or, supposing the court illegal, and that the objection can be taken by the party selecting the forum of litigation, then there never was any legal suit commenced, no legal service of the process on the maker of the note, and hence no such legal judgment rendered as is contemplated by the statute, in order to fix the assignor's liability.

In short, if the courts held from 1861–3 were legal, judgment ought to have been taken; if illegal, no sufficient or proper suit was ever brought. Either "horn of the dilemma" defeats the right of recovery here.

3. There was, again, want of due diligence in not obtaining ·judgment at the fall term of the circuit court in 1865. No objection can be urged that this was not a legal court.

The case was not defended; there was not even an "appearance" on the part of the defendant, the maker of the note. Yet judgment was not taken, but the cause was continued.

Is this a release of the assignor? Is it a want of that due diligence which was intended to be required by our law-makers, in the prosecution of the maker to insolvency? See *Morr v. Smith*, 7 B. Monroe, (Ky.) 189, 192. In that case, it is held that "a delay to issue execution upon (such) an assigned note for seven days after it might have issued, wholly unaccounted for, is a forfeiture of recourse against the assignor."—p. 192.

4. There are several adjudications which serve to explain the character of that "due diligence" which is decided by our own supreme court, in *Bradford v. Bishop*, *supra*, to be requisite under the statute, in order to retain, without forfeiture, this recourse against the assignor.

In *Perrin v. Bradwell*, 3 Dana, 596, it is held that "if an assignee of a note omits to bring suit against a debtor until the time of service is nearly out, and then the process

is not served in time, in consequence of the debtor's absence, the *laches* will prevent the ultimate resort to the assignor."

In *Bronaugh v. Scott*, 5 Call. 78, it is decided that "in order to charge the assignor of a promissory note, the assignee must bring an effectual suit; a suit which fails on account of informality in the proceedings, is not a sufficient suit."

In *Bishop v. Yeazle*, 6 Blackf. 127, a delay of six months in issuing execution, unexplained by the assignee, was held to discharge the assignor from liability on the assignment.

All these principles of the law merchant, defining what is, and what is not due diligence, remain in full force, and the party plaintiff is to be held strictly up to these requirements. The only excuses for a failure to exercise this diligence in every step of the prosecution of the suit—whether in the issue of the summons and complaint, the obtaining of judgment, or the issue of execution—are found in section 1854 of the Code. The specific enumeration of these six excuses is an exclusion of all others not enumerated.

It is not contended that the plaintiffs have brought themselves within the letter, or even the spirit, of any one of these.

We contend, further, that plaintiffs can not recover against the assignor, because they failed to bring suit against the maker of the note in time to obtain judgment at the first court, and do not allege, or show any excuse, for not doing so. The letter of the statute (§ 1851, Rev. Code,) requires that suit be brought against the maker to the "first court" after maturity of the note. This view is sustained by authority directly in point: *Perrin v. Bradwell*, 3 Dana, 597; 2 J. J. Marshall, (Ky.) 218.

The highest sum claimed in any one of the counts—that is to say, $300—is all that can be recovered. If there are two separate notes, each count ought to have claimed enough to cover the principal and interest of both demands.

There certainly can be no recovery of any larger amount than that claimed in the complaint. The first count claims

$250, the second $300.  The judgment can not be for more than $550, or the sum of these two.  It is for $997, or $447 more than what is claimed.

If the judgment of the circuit court is not reversed and the cause remanded on other assignments of error, this court will at least correct the judgment by reducing it to the proper amount, such as may be sustained by the complaint.

W. R. SMITH, and RICE & CHILTON, *contra*.

PETERS, J.—No notice will be taken of the special pleas and the demurrers thereto, for the reason that the same questions arise upon the plea of the general issue pleaded with leave as above shown.  No question can arise on the evidence in the cause that may not be determined on that plea.  And as all the evidence introduced on the trial is set out in the bill of exceptions and several charges asked upon them, which involve a consideration of the same matters as are pleaded in the special pleas, which were overturned by the demurrers, the decision must be the same, whether made in the one or the other mode. And if the allowance of the demurrers was error at all, it was error without injury, which is not sufficient to justify a reversal for that cause.—*Powell v. Asten*, 36 Ala. 140; *Rodgers, Adm'r, v. Brazeale*, 34 Ala. 512; *Kannady v. Lambert*, 37 Ala. 57; *Lawson v. Hicks*, 38 Ala. 279.

Then, passing by the demurrers to the main question in the litigation, I think there was no error committed in the proceedings in the court below as shown by the bill of exceptions, which would entitle the appellant to a reversal, notwithstanding the ingenious and able argument of the learned counsel for the appellant in this court.  It is true, that an assignor or an indorser of a note or bill is by the law-merchant regarded to some extent as the surety of the maker, who is to be regarded as the principal debtor. And if the holder of the note or bill either discharge or improperly suspend his remedy against the maker, the assignors and indorsers will be discharged.  This is a general

rule of law in favor of mere securities which applies to all contracts.—Smith Merc. Law, 268, Holc. & Ghol. ed., 1847. But this principle can not be said to apply in this case. There was no evidence of any improper suspension of the remedy which the law did not permit. The maker of the notes was sued to the first term of the court by the holder, after the notes fell due. This fixed the assignor's liability to pay the notes, in the event they were not paid by the maker, and upon his insolvency, ascertained in the manner prescribed by the statute. This suit is in lieu of protest and notice of non-payment, and of demand on the maker, by the law-merchant. It was intended to have no other effect.— *Goggin v. Smith, Adm'r*, 35 Ala. 683. Here, the evidence introduced by the plaintiffs, on the trial, fully sustains the allegations of the complaint. This was all the diligence required by the Code. The language of the law is this : " On all contracts assigned by writing, except bills of exchange, or other instruments and notes payable in money at a bank or private banking house, when the amount due is over fifty dollars, to charge the indorser or assignor, suit must be brought against the maker in the county of his residence to the first court to which suit can properly be brought after making the indorsement or assignment; and if judgment is obtained, execution must be issued returnable to the next court thereafter, and his inability to answer such judgment proved by the return of " no property."—Rev. Code, § 1851. To fix the liability of the assignor, the first step is to bring the suit against the maker within the proper time. After this is done, the progress of the cause in court, until the final judgment, is a matter wholly within the control and discretion of the court. Whether a cause is tried or continued, is a matter of discretion. And the presumption is, that the continuance has been allowed upon sufficient showing.—*Lucas v. Hitchcock*, 2 Ala. 287. And that which has been done in court with due and legal dispatch, can not be said to be negligence. At least, it can not be said to be such negligence as the statute forbids in this case. To fix any other, would be legislation. It would go beyond the words or

the purpose of the statute. The statute above quoted very clearly fixes all the prerequisites of diligence necessary to bind the assignor. This court can neither add to these, nor diminish their number. In this case, the proofs show that they were all complied with, in due course and process of law. This was enough.—Const. Ala. 1867, Art. I, § 15; Rev. Code, § 1851; *Bates v. Ryland*, 6 Ala. 668.

The objection that the verdict in the court below was for a larger sum than was justified by the claim set up in the complaint, and that the judgment follows the verdict, can not be made for the first time in this court. It is such an error, if it exists, that might have been corrected in the court below, and its correction ought first to have been sought there.—*Evans v. Bridges*, 4 Port. 348; *S. C.*, Smith Cond. 221; *Moore v. Coolidge*, 1 Port. 280; *S. C.*, Smith Cond. 477.

The judgment of the court below is affirmed.